T.C. Summary Opinion 2015-68

UNITED STATES TAX COURT

RICHARD A. BORING AND MARGARET A. BORING, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13828-14S.                    Filed November 24, 2015.

Richard A. Boring and Margaret A. Boring, pro sese.

<u>Christopher J. Richmond</u>, for respondent.

SUMMARY  OPINION

WHERRY, <u>Judge</u>:  This case was heard pursuant to the provisions of section

7463 of the Internal Revenue Code in effect when the petition was filed.[1]

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986 as amended and in effect for the year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Respondent mailed a statutory notice of deficiency to petitioners on March 11, 2014, which determined an income tax deficiency for petitioners' 2010 tax year of $20,279. Respondent also determined an accuracy-related penalty under section 6662(a) for 2010 of $4,055. Petitioners filed a timely Tax Court petition in response on June 13, 2014.[2] Petitioners' case was tried in June 2015 in Los Angeles, California.

After a concession by petitioners[3] and ignoring purely computational matters, the issues for consideration are: (1) whether petitioners are entitled to deduct various expenses reported on Schedule C, Profit or Loss From Business, for 2010; (2) whether alternatively petitioners may deduct any of the claimed Schedule C expenses on Schedule A, Itemized Deductions, in excess of the amount respondent allowed; (3) whether petitioners are liable for an accuracy-related penalty for 2010; and (4) whether the Court should impose a section 6673

---

[2]The petition was sent to the Clerk of the Tax Court via the U.S. mail, in an envelope postmarked June 9, 2014, and was therefore deemed timely. See sec. 7502(a).

[3]Petitioners have conceded that they received $48 of taxable interest income in 2010 which they neglected to report or pay Federal income tax on.

penalty as respondent requested in his motion to impose sanctions, filed July 20, 2015, for "maintaining this case primarily to delay collection of their proper income tax" utilizing arguments for which "their position is groundless."

## Background

Petitioners are no strangers to this Court. This case constitutes, at the minimum, their 14th case, involving at least one of petitioners, spanning almost 30 taxable years from 1981 to 2010.[4] Most recently they litigated the consolidated cases at docket Nos. 16195-12S, 26201-12S, and 1070-13S, which were decided by this Court's T.C. Summary Opinion 2014-105. Those cases, like this one, addressed similar continuing issues arising primarily from petitioners' efforts to substantiate and deduct expenses which they attribute to Mr. Boring's Schedule C sole proprietorship d.b.a. Rambor Technology (Rambor) or his partnership Board Automation.[5] The substantive tax disputes emanate from petitioners' misunderstanding of the terms "ordinary" and "necessary" as used in

---

[4]Their 10 cases as to which the Court still has retained records were assigned docket Nos. as follows: 13828-14S, 1070-13S, 26201-12S, 16195-12S, 17698-05L, 17612-05L, 28046-92, 12836-99S, 4639-99S, 1864-89.

[5]The partnership's name used here is derived from the transcript of Mr. Boring's trial testimony; however, other documents in the record indicate the name may have been Borett Automation Technologies. For simplicity we refer to it as Board Automation.

defining deductible business expenses pursuant to section 162 and the interrelationship of that section with section 262, defining nondeductible personal expenses.

Petitioners resided in their longtime residence in California when they filed their petition in this case. During the year 2010 petitioner Margaret Boring worked as a bookkeeper for the Conejo Valley Unified School District. Petitioner Richard Boring worked as an engineer for TECOM Industries, Inc. (TECOM), a division of Smith's Group, which is headquartered in Thousand Oaks, California. Petitioners filed a late joint Federal income tax return, Form 1040, U.S. Individual Income Tax Return, for the taxable calendar year 2010 on June 25, 2012.[6] This tax return references a "Federal Schedule 1" allegedly attached to that tax return. Although no document entitled "Federal Schedule 1" was in fact attached to the filed tax return, petitioners provided an Exhibit 3 during the pendency of this case which they assert consists of the alluded-to "Federal Schedule 1", and that exhibit was admitted into the evidentiary record.

Respondent disallowed all of the claimed Schedule C Rambor expense deductions for lack of substantiation as follows:

---

[6]The record does not explain why the revenue agent, who examined petitioners' 2010 tax return, and respondent failed to assert a sec. 6651(a) late-filing penalty in this case.

| Expense | Amount |
|---|---|
| Business use of home | $8,647 |
| Repairs and maintenance | 3,997 |
| Legal and professional services | 8,761 |
| Insurance (other than health insurance) | 2,431 |
| Other | 47,554 |
| Depreciation and section 179 | 9,064 |
| Car and truck | 8,073 |
| Total | 88,527 |

Mr. Boring was a motion control designer whose full-time job with Rambor during 2010 and his earlier In The Air Networks (ITAN) work efforts have since 1995 involved semiconductors and signal directional and tracking devices. While he has apparently worked diligently on his ITAN and Rambor activities and with other associates achieved some technological successes, Rambor's income has never exceeded the reported expenses, and he has reported only losses on Schedule C of his Federal income tax returns for a number of years. At trial Mr. Boring explained that his business is "a business of intangible assets or liabilities primarily. Our focus is to get the tangible assets, tangible products. Our business is basically the sustainability of product development. We're trying to survive to

the point where we could take our research and experimentation, which has been very successful, and take it to the next step to product development."

More specifically Rambor was attempting to capitalize on Mr. Boring's prior work as a contract worker and later as an employee whose wages were reported on Form W-2, Wage and Tax Statement. He had focused on development of manned or unmanned aerial vehicles (drones with high resolution video cameras) with a low-profile tracking pedestal. That pedestal moved an MS DOS RVT-2000 or similar triband antennas. The antenna followed the drone from the ground or was attached to the drone, depending on the drone's size and mission, so that it could transmit real-time live video images from the drone or a NASA satellite back to NASA or to army and marine operational unit headquarters. His role in this effort was primarily as the architect of the device, including the software design and implementation for bare metal software routines that ran at the system algorithm and microcontroller interrupt levels. The software in turn directed the operation of electric motors which controlled the tracking of the aircraft or ground-based antennas and selection of the appropriate antennas.

The principal purpose of the device was earth-satellite or earth-air communications and battlefield intelligence. Particularly sought with respect to the drones was real-time information regarding improvised explosive devices (IED)

planted in the landscape which could be detected by comparing aerial pictures taken before and after their implantation. This IED detection device communications methodology was very successful, and Rambor with other affiliated parties was attempting to adopt and modify it for use by Southwest Airlines. That airline's need for a similar device arose in connection with its airline fleet and satellite or land-based linked communications during flight operations. Complicating this effort was the requirement that the device be quite compact and capable of operating continuously at temperatures ranging from minus 55 degrees to plus 85 degrees centigrade, withstand airplane vibration, and maintain pointing angles to a designated satellite within a tenth of one degree, at all times. The device Mr. Boring and his associates developed for Southwest Airlines was also very successful.

Petitioners provided numerous documents, primarily bills and credit card and bank statements, in an effort to substantiate the expenses underlying their claimed Schedule C deductions. A review of the provided documents indicates they are composed primarily of records documenting living expenses, personal automobile expenses, costs of maintaining their personal residence, and costs of assisting relatives.

Mr. Boring explained that his work was "as close to twenty-four- seven as possible until there's a positive outcome" with only Christmas, Easter, and Thanksgiving off. He asserts that because of the long hours he incurs expenses beyond what we would normally consider to be ordinary and necessary. He viewed his home office as Rambor's and Board Automation's principal place of business and their parts storage facility. Rambor's and Board Automation's (i.e., Mr. Boring's) business assets comprised intangible assets, knowledge, and data which was provided to TECOM daily as an aspect of his employment. Consequently, any travel from there to TECOM at locations where it does business was, in Mr. Boring's view, business travel miles, not personal commuting expenses. Similarly, Mr. Boring's daily expenses are often business expenses, in his opinion, as they are incurred for his (Board Automation's and Rambor's intangible assets) continued survival. His personal knowledge and abilities were intrinsic to these intangible assets, and their operational survival in turn depended on his survival and his daily living expenses.

## Discussion

I. <u>Schedule C Business Expense Deductions</u>

A. <u>General Rules</u>

Deductions are a matter of "legislative grace", and "a taxpayer seeking a deduction must be able to point to an applicable statute and show that he comes within its terms."[7] <u>New Colonial Ice Co. v. Helvering</u>, 292 U.S. 435, 440 (1934); <u>see also</u> Rule 142(a). As a general rule, section 162(a) authorizes a deduction for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business."

An expense is ordinary for purposes of this section if it is normal or customary within a particular trade, business, or industry. <u>Deputy v. du Pont</u>, 308 U.S. 488, 495 (1940). An expense is necessary if it is appropriate and helpful for the development of the business. <u>Commissioner v. Heininger</u>, 320 U.S. 467, 471 (1943). Section 262, in contrast, generally precludes deduction of "personal, living, or family expenses."

---

[7]This burden may be shifted to the Commissioner as to factual issues, pursuant to sec. 7491, under certain circumstances not present in this case. Petitioners have not asserted such a shift, and petitioners have not maintained the required records nor cooperated with reasonable requests of respondent as required by sec. 7491(a)(2) to trigger the application of this burden-shifting provision.

The breadth of section 162(a) is tempered by the requirement that any amount reported as a business expense must be substantiated, and taxpayers are required to maintain records sufficient therefor.  Sec. 6001; Hradesky v. Commissioner, 65 T.C. 87, 89-90 (1975), aff'd, 540 F.2d 821 (5th Cir. 1976); sec. 1.6001-1(a), Income Tax Regs.  When a taxpayer adequately establishes that he or she paid or incurred a deductible expense but does not establish the precise amount, we may in some circumstances estimate the allowable deduction, bearing heavily against the taxpayer whose inexactitude is of his or her own making.  Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930).  There must, however, be sufficient evidence in the record to provide a basis upon which an estimate may be made and to permit us to conclude that a deductible expense, rather than a nondeductible personal expense, was paid or incurred in at least the amount allowed.  Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957); Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985).  The record before us is rife with inconsistencies as to nearly every element that would be germane to determining or estimating the amounts of any deductible expenses.

Furthermore, business expenses described in section 274(d) are subject to rules of substantiation that supersede the Cohan doctrine.  Sanford v. Commissioner, 50 T.C. 823, 827-828 (1968), aff'd, 412 F.2d 201 (2d Cir. 1969);

sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985). Section 274(d) provides that no deduction shall be allowed for, among other things, traveling expenses, entertainment expenses, gifts, and expenses with respect to listed property (as defined in section 280F(d)(4) and including passenger automobiles, computer equipment, and property generally used for entertainment, recreation or amusement) "unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating the taxpayer's own statement": (1) the amount of the expenditure or use; (2) the time and place of the expenditure or use or date and description of the gift; (3) the business purpose of the expenditure or use; and (4) in the case of entertainment or gifts, the business relationship to the taxpayer of the recipients or person entertained. Sec. 274 (d).

In addition to the general business expense deduction rule of section 162, section 167(a) authorizes "as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence) --(1) of property used in the trade or business, or (2) of property held for the production of income." In some limited circumstances capital asset costs may be expensed rather than capitalized for future expense recovery through depreciation or amortization. See sec. 179.

When applying sections 162, 167, and 179 in the context of particular items of property, the following general framework has emerged through caselaw. Under those sections, the initial question is whether ownership and maintenance of the property is related primarily to business or to personal purposes. Int'l Artists, Ltd. v. Commissioner, 55 T.C. 94, 104 (1970) (and cases cited threat); see also, e.g., Richardson v. Commissioner, T.C. Memo. 1996-368; Griffith v. Commissioner, T.C. Memo. 1988-445. The answer to this question determines which of three approaches is appropriate: (1) if acquisition and maintenance of the property are primarily associated with profit-motivated purposes and any personal use is distinctly secondary and incidental, expenses and depreciation are deductible; (2) if acquisition and maintenance are motivated primarily by personal considerations, deductions are disallowed; and (3) if substantial business and personal motives exist, allocation becomes necessary. Int'l Trading Co. v. Commissioner, 275 F.2d 578, 584-587 (7th Cir. 1960), aff'g T.C. Memo. 1958-104; Int'l Artists, Ltd. v. Commissioner, 55 T.C. 94; Richardson v. Commissioner, T.C. Memo. 1996-368; Griffith v. Commissioner, T.C. Memo 1988-445; Kenerly v. Commissioner, T.C. Memo. 1984-117.

Where the property in question is residential, section 280A provides a further limitation with potential bearing on business-related deductions claimed under section 162 or 167.  That statute reads in part as follows:

SEC.  280A.  DISALLOWANCE OF CERTAIN EXPENSES IN CONNECTION WITH BUSINESS USE OF HOME, RENTAL OF VACATION HOMES, ETC.

(a) General Rule.--Except as otherwise provided in this section, in the case of a taxpayer who is an individual or an S corporation, no deduction otherwise allowable under this chapter shall be allowed with respect to the use of a dwelling unit which is used by the taxpayer during the taxable year as a residence.

 *         *         *         *         *         *         *

(c) Exceptions for Certain Business or Rental Use; Limitation on Deductions for Such Use.--

(1) Certain business use.--Subsection (a) shall not apply to any item to the extent such item is allocable to a portion of the dwelling unit which is exclusively used on a regular basis--

(A) as the principal place of business for any trade or business of the taxpayer,

(B) as a place of business which is used by patients, clients, or customers in meeting or dealing with the taxpayer in the normal course of his trade or business, or

(C) in the case or a separate structure which is not attached to the dwelling unit, in connection with the taxpayer's trade or business.

> In the case of an employee, the preceding sentence shall apply only if the exclusive use referred to in the preceding sentence is for the convenience of his employer. * * *

> (2) Certain storage use.--Subsection (a) shall not apply to any item to the extent such item is allocable to space within the dwelling unit which is used on a regular basis as a storage unit for the inventory or product samples of the taxpayer held for use in the taxpayer's trade or business of selling products at retail or wholesale, but only if the dwelling unit is the sole fixed location of such trade or business.

> (3) Rental use.-- * * *

To support their claimed Schedule C expense deductions, petitioners produced documents, categorized according to the expense headings on Schedule C, that were stipulated by the parties and admitted into evidence. In addition, a spreadsheet schedule that Mr. Boring prepared entitled "Rab Biz Expenditures 2010.xls" was provided to respondent to explain petitioners' claimed deductions and on respondent's motion, without objection by petitioners, was admitted into evidence as Exhibit 14-R. The documents were supplemented by Mr. Boring's sworn testimony which, as to specific expenses was broad in scope with very few, if any, specific details as to any individual item's business purpose or amount. On cross-examination Mr. Boring acknowledged that several items listed on Exhibit 14-R as Schedule C deductible expenses for "plant operating expenses" included

expenses for various individual credit card bills and other personal items. Mr. Boring's accounting methods and procedures, labeled "Idiosyncratic views" by respondent in his brief, allegedly treated petitioners' outside employment wage income as Rambor revenue although both petitioners were employees whose wages were reported on Forms W-2 and the record does not indicate that Rambor had contracted with TECOM or the school district to provide either petitioner's services to his or her employer or that they had employment agreements with Rambor.

B. Business Use of Home

Mr. Boring characterized his home office as his principal place of business although he was a full-time employee of TECOM during 2010 and was provided with office workspace at TECOM. He also characterized Rambor and his partnership Board Automation, which had earlier in the 2000s contracted with S&D Engineering, a vendor to TECOM, as his principal businesses. Consequently, it is petitioners' view that because of their intent to report all income, including their employer expense reimbursements, through Rambor or Board Automation, their home was their principal office for all of their income activities. Nevertheless, whatever the intent, petitioners properly reported their wages on line 7 of their Form 1040. Attached to that was Form 8829, Expenses for Business Use

of Your Home. Petitioners reported that the area of their home regularly and exclusively used for business was 790 square feet out of the home's total area of 2,113 square feet.[8] Thus, 37.39% of their home was, they contend, used exclusively for business.

On the basis of these facts, they concluded that $8,647 of their reported $23,127 of home mortgage interest expense was properly deductible for the business use of their home. They deducted the balance of $14,480 of the reported home mortgage interest expense on Form 1040, Schedule A. Other than their Form 8829 and Mr. Boring's uncorroborated testimony, which we do not accept as correct and credible, petitioners did not introduce any evidence substantiating the expenses underlying their home office expense deduction. Section 280A generally prohibits the deduction of certain costs in connection with the business use of a taxpayer's residence. Section 280A(c)(1), however, permits a deduction for any

---

[8]On page 13 of their Exhibit 8-P there is a floor plan for their home with a living area breakdown table. The table itemizes the square footage and size of each room on the first and second floors. It indicates a total of 2,522 square feet plus a 462-square-foot garage. The approximately 400-square-foot variance between the Form 8829 information as to total square feet and the floor plan schematic and table is not explained or addressed by the record. The discrepancy does portend some doubts as to petitioners' credibility but may also be attributed to inconsistently counting the garage space for business use but failing to include its square footage in the home's total square footage.

item allocable to a portion of a residence that is regularly and exclusively used as the principal place of business for any of the taxpayer's trades or businesses.

In deciding whether a residence is the principal place of business, we compare the business use of the residence with the business use of all of the other places where business is transacted. See Commissioner v. Soliman, 506 U.S. 168, 174 (1993). A deduction is allowed only when the residence is the most important or significant place for the business. The two primary considerations are the relative importance of the activities performed at each business location and the time spent at each place. See id. at 175. The relative importance of business activities engaged in at the office in the home "may be substantially outweighed by business activities engaged in at another location." See Strohmaier v. Commissioner, 113 T.C. 106, 112 (1999). The flush language following section 280A(c)(1)(C) was liberalized by Congress in the Taxpayer Relief Act of 1997, Pub. L. No. 105-34, sec. 932(a), 111 Stat. at 881. See H.R. Rept. No. 105-148, at 407 (1997), 1997-4 C.B. (Vol. 1) 319, 729. This flush language provides that

> the term "principal place of business" includes a place of business which is used by the taxpayer for the administrative or management activities of any trade or business of the taxpayer if there is no other fixed location of such trade or business where the taxpayer conducts substantial administrative or management activities of such trade or business.

Sec. 280A(c)(1); see Flying Hawk v. Commissioner, T.C. Memo. 2015-139, at *8-*9.

In the case of a taxpayer who is an employee, the home office must be for the convenience of the employer; it cannot just be a place in which the employee chooses to do some of his work. Sec. 280A(c)(1) (flush language); Frankel v. Commissioner, 82 T.C. 318, 323, 326 (1984). It must be used exclusively for the employer's work and not for personal use. Sec. 280A(c)(1); Cadwallader v. Commissioner, 919 F.2d 1273, 1275 (7th Cir. 1990), aff'g T.C. Memo. 1989-356. A taxpayer may have only one principal place of business for each business in which he is engaged. See Curphey v. Commissioner, 73 T.C. 766, 776 (1980). To determine the principal place of business within the meaning of section 280A(c)(1)(A) the Court may also ascertain the "focal point" of a taxpayer's business activities. Jackson v. Commissioner, 76 T.C. 696, 700 (1981); Baie v. Commissioner, 74 T.C. 105, 109 (1980).

The fact that the employer provides inadequate office facilities is not dispositive of whether a home office is for the convenience of the employer. See Dudley v. Commissioner, T.C. Memo. 1987-607, aff'd without published opinion, 860 F.2d 1078 (6th Cir. 1988). However, it is unclear from the record whether Mr. Boring was able to conduct all of his antenna communication technology activities

at TECOM. Therefore, the Court must look to whether Mr. Boring's home office is his principal focal point of business and vital to his communications technology engineering efforts.

Although it might, in Mr. Boring's opinion, have been less convenient or inadequate, TECOM did provide Mr. Boring with an office or workplace facilities. Additionally, on the basis of the record, the Court cannot conduct an accurate comparison of the time Mr. Boring spent working at his home relative to the time he spent working elsewhere or determine that a home office was vital to his communications technology efforts. Mr. Boring's Form W-2 employment income greatly exceeded his Schedule C gross income; and as his work activities with respect to both were interrelated, we conclude that his principal place of business for Federal income tax purposes was TECOM.

Petitioners did not show that the home office was used exclusively for business or was for business storage or that the use was for the convenience of their employers, TECOM and the school district. Pictures of the home's interior, included as a part of Exhibit 13-P, appear to show business documents, books, work-related devices, and allegedly stored items haphazardly distributed in various rooms of the house, some of which apparently also served as living areas and access points for other rooms. Accordingly, the Court concludes that petitioners

have failed to meet the requirements of section 280A(c)(1) or (2) and are not entitled to a deduction for the expenses of maintaining a home office. Therefore, the $8,647 is not allowable as a Schedule C deduction. See Christine v. Commissioner, T.C. Memo. 2010-144, 99 T.C.M. (CCH) 1591, 1597-1598 (2010), aff'd, 475 F. App'x 259 (9th Cir. 2012); Deihl v. Commissioner, T.C. Memo. 2005-287, 90 T.C.M. (CCH) 579, 586-587 (2005).

C. Repairs and Maintenance

Petitioners deducted as a Schedule C repairs and maintenance expense $3,997, all of which respondent disallowed. In support of this deduction petitioners provided bills from Fisher Plumbing for $295; Westlake Management Association annual dues and an electric boat and nonelectric boat dock fees schedule reflecting charges in January 2010 of $1,817.30; and an invoice from Southshore P.D.A. for $720 of annual dues. The balance of the reported expense is not explained. Petitioners have failed to carry their Rule 142(a) evidentiary burden. There is no evidence in the record to show that these expenses were other than personal pleasure, recreation, or residence expenses, all of which are nondeductible as provided by section 262. Section 262(a) provides unequivocally that "[e]xcept as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living, or family expenses." Consequently, respondent's

determination that the $3,997 Schedule C repairs and maintenance expense deduction is not allowable is upheld by the Court.

   D. Legal and Professional

   Respondent disallowed petitioners' claimed deduction for $8,761 of legal and professional expenses. In support of their claimed section 162 deduction petitioners submitted three items: (1) an architect's charge apparently for the $4,466.29 portion of the total $8,194.60 paid, before December 2010, for design, construction, engineering, homeowner review and approval, and governmental agency approval with respect to an addition to and remodeling of their personal residence; (2) their Chase bank January 31 through February 17, 2010, statement reflecting a February 12, 2010, check No. 3312 payment of $3,300 which they assert, but do not document, was paid to the construction contractor, Dream Tree Construction, in February 2010 for its work on their personal residence; and (3) a letter invoice for an additional $994.60 paid to the architect, Scott E. Fajnar, in December 2010 to pay off the balance of the $8,194.60 total charge for his work related to petitioners' personal residence.

In addition to the fact that these charges appear to be capital expenditures which would not be currently deductible pursuant to section 263(a),[9] they again constitute personal expenditures which are nondeductible as mandated by section 262. Thus, respondent's disallowance of the claimed $8,761 Schedule C deduction will be upheld.

E. Insurance

In support of their claimed deduction for a $2,431 Schedule C insurance expense, all of which respondent disallowed, petitioners provided 2010 statements from USAA Insurance Co. These statements were with respect to a balance due of $2,704.27 as of December 29, 2009, for their valuable personal property, automobile, and residential homeowners insurance policies. The statements document payments during 2010 of $3,441.72 and indicate a balance due, as of September 28, 2010, of $1,118.46. The record, which does not contain every month's statement and which includes no statements after September 2010, does

---

[9]Sec. 263(a) provides in relevant part:

SEC. 263(a). General Rule.--No deduction shall be allowed for--

(1) Any amount paid out for new buildings or for permanent improvements or betterments made to increase the value of any property or estate.

not explain the discrepancy between the amounts paid and the amount claimed. But we need not resolve this discrepancy.

As explained previously, petitioners do not qualify for a home office expense deduction for use of their residence; consequently, their personal property and residential USAA casualty insurance premiums are personal expenses covered by section 262 that are not allowable as a deduction for Federal income tax purposes. Their personal automobile insurance for a 1989 Ford Bronco, a 2005 Nissan Pathfinder, and a 2008 Nissan Pathfinder is also nondeductible since they also took the USAA automobile insurance charges into account in their computations of deductible car and truck expenses. The same expense even if shown to be deductible may not be deducted twice.

F. Other Expenses

Petitioners deducted Schedule C other expenses of $47,554, all of which respondent disallowed. This amount comprised IP license subscription services of $7,344; subsystems, software, components, parts, travel, and supply expenses of $6,300; "Rambor M" (for Margaret Boring) plant operating expenses of $18,737; and "Rambor R" (for Richard Boring) plant operating expenses of $23,650; minus $8,477 of unexplained adjustments to the claimed expenditures. In support of the reported net deduction petitioners submitted two receipts from the California

School Employees Association, apparently for 12 Sees candy items (total cost $129) and six Mann Theaters tickets (total cost $49) plus numerous credit card and bank statements for 2010.

As was the case with their similarly self-prepared tax returns for years at issue in their earlier tax cases, decided by this Court's T.C. Summary Opinion 2014-105, the credit card and bank statements appear to consist of an accounting of the payment of petitioners' normally incurred daily living expenses. Exhibit 14-R prepared by petitioners purports to itemize inter alia the reported other expenses. As to the $7,394 of IP license subscription services it and credit card and bank statements indicate: for AT&T/Open $1,640.89; for Sprint Broadband $780; for Adan LOC Services $1,560; for Verizon Cellular I $540; for Verizon Cellular 2 $180; for Time Warner $616.93; and for utilities $2,025.75. There was no specific evidence provided as to the actual business use of these communications and utility services nor any attempt to allocate charges between business and personal use. Without more, petitioners have failed to meet their burden of proof. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

Normally, telephone and cable broadband services and home utility charges would constitute personal expenses which are nondeductible pursuant to section 262. If there is a true independent business component, it must be established by

the case record and the amount thereof determinable from the admitted evidence. Any contention that all such expenses, including the personal living component, are deductible is flatly mistaken.

As to the $6,300 of reported subsystem, component parts, travel, software, and supply expenses consisting of open source engineering duplication expenses they are also not deductible. Petitioners provided no other information or documentation regarding these expenses. Looking further through the record for specific evidence as to their business purpose, available payment or supplier information provides no factual or evidentiary help to petitioners. Thus, these expenses too are not sufficiently substantiated and petitioners' evidentiary burden remains unmet; and respondent's disallowance determination is upheld. See Rule 142(a); Welch v. Helvering, 290 U.S. 111.

G. Rambor M and Rambor R Plant Operating Expenses

Respondent disallowed $42,387 of reported expenses classified by petitioners, as noted above, as "Rambor M" or "Rambor R" plant expenses. In support of the reported expenses petitioners' computer-generated "Exhibit 14-R Rab Biz Expenditures 2010.xls" lists numerous payments which do not always correlate with amounts on the Schedule C. The list references such items as: multiple S. Cheevers Procurement/Development Services charges; Costco charges;

a Target charge; various Chase and HSDC check or credit card payments; Chevron, Texaco, American Express, and Visa credit card payments; petty cash expenditures; a USAA insurance payment of $381.24; Tax Software Store charges of $155; and other miscellaneous items. Petitioners did not adequately explain these charges or their specific business purpose, use, or specific need.

On cross-examination by respondent's counsel the following colloquy with Mr. Boring occurred.

Q    Mr. Boring, as I am looking at this spreadsheet under Plant Operating Expenses back on page 1, I see a line that says S. Cheevers Procurement Services.

A    Right.

Q    UGS contracts for $1,000.

A    Right.

Q    That is a payment to your son-in-law; is that right?

A    Say again.

Q    That is a payment to your son-in-law, Mrs. Boring's child from her previous marriage?

A    It's my stepson.

Q    Sorry, your stepson, my apologies.

A Yes.

Q And the next line says Chase, and then it has the numbers 8825 C/C 1/12/10.  Do you see that?

A. Yes, I do.

Q That's the payment of your credit card.

A Correct.

Q And as we go down through the rest of this, we also see a payment to HSBC.  That's also a payment to a credit card.

A Okay.

Q Another payment to Chase 2/11/10.  Do you see that?

A Sure.

\*  \*  \*  \*  \*  \*  \*

Q So your position is that although this spreadsheet [Exhibit 4-R] that you have provided explaining your expenses includes your credit card bills, that these credit card bills in fact are not part of the plant operating expenses?

A Are not part of--

Q Your plant operating expenses, the Rambor R Plant operating expenses.

A    Not in total.

Q    And there is nothing in these documents that shows what the Rambor R Plant operating expenses might otherwise be?

A    That is correct.

Although Mr. Boring contends that at least some of the charges on his credit card statements were business related, he did not adequately substantiate those charges other than by vague general testimony. While he specifically referenced HSBCidentityplan.com, Sprint Wireless, and the ADI analog device as business expenses, he presented no further evidence that they were not section 262 personal expenses. He speculated that the "Starbucks most likely was a meeting with some guys" and for business purposes. Likewise, he asserted from memory that "Tandoree Oven in Los Gatos, California, that was at the embedded systems conference" and the convention center; the Bob Hope Airport charges were associated with that business trip. Such general claims are not sufficient where, as here, the supposedly deductible items are so intertwined with clearly personal expenses. We cannot allow a deduction in such circumstances given the total absence of the records required to meet the previously discussed section 274(d) enhanced substantiation provisions. Consequently, none of the reported $47,554

"Other Expenses" are allowable and respondent's disallowance determination is sustained in full.[10]

_____

[10]Petitioners' apparent theory that their personal living costs are ordinary and necessary to permit them to stay healthy, work, and convert the business intangible assets, composed of their knowledge, to tangible products and gross income is simply incorrect under Federal tax law. See generally sec. 61(a), defining gross income generally as "all income from whatever source derived", and sec. 262, addressed and quoted above. A much stronger factual case was considered by this Court in Green v. Commissioner, 74 T.C. 1229 (1980). The taxpayer there had a rare AB negative blood type. Her blood plasma, which she could and did sell to users willing to pay her significant amounts for her plasma, was the source of her income. She, like petitioners here, sought to deduct her daily living expenses. We explained:

> Generally stated, the question presented by this case is whether petitioner may offset her taxable income by the expenses she incurred in obtaining payment for her blood plasma "donations." The ability to offset income with expenses incurred either under section 162, in carrying on a trade or business, or under section 212, for the production of income, requires by definition the existence of related income. * * * [Id. at 1232.]

We concluded that only the extraordinary additional living expenses such as those for "special drugs" and supplements were deductible. Normal living expenses such as her health insurance were not deductible as business expenses although a portion of the health insurance was allowable as a Schedule A itemized medical expense deduction. We explained that

> [a]lthough petitioner attempts to justify the deduction by comparing her body to some insured manufacturing machinery, the instant set of facts prevents such a comparison; her body is not a replaceable, or easily repairable, machine maintained solely for the production of blood plasma. The unique nature of the"manufacturing machinery" in this instance makes the personal nature of the health insurance

(continued...)

H.  Depreciation and Section 179 Expenses

Respondent has disallowed $9,064 of claimed deductions for depreciation and section 179 expenses.  Petitioners provided Exhibit 8-P in addition to their Form 4562, Depreciation and Amortization filed with their 2010 Form 1040 to explain and substantiate the expenses underlying these deductions.  The documents indicate that the claimed deductions emanate entirely from their use of their personal residence, its subsequent structural improvements, and their three personal automobiles, a 1989 Ford Bronco II, a 2005 Nissan Pathfinder, and a 2008 Nissan Pathfinder.  As the Ford Bronco was already fully depreciated, the claimed deduction was for their home and the two Nissan Pathfinders.

We have previously stated that section 280A tightly restricts business deductions for personal residences.  Petitioners have not shown that any part of the home was used exclusively for business.  Further, their calculation of space which they conclude was used exclusively for business includes 150 square feet in the garage for "Business parking" and 120 square feet for storage.  The parking was apparently for, at any one time, one of their three personal cars.  This is not

_____

[10](...continued)
premiums unavoidable.  Insuring against the costs of maintaining petitioner's health is primarily a personal concern, not merely a business concern.  Cf. Sparkman v. Commissioner, 112 F.2d 774, 777 (9th Cir. 1940).  [Id. at 1235-1236; fn. refs. omitted.]

exclusive business use within the meaning of section 280A(c)(1)(A) and (C), and petitioners have similarly failed to prove exclusive business use (or business need) for any of their reported 790 square feet allegedly devoted to business use. In addition to the garage (which was not proven to be regularly used for storage as required by section 280A(c)(2)), this space allegedly included two office areas and a bathroom.

The automobiles are subject to the strict substantiation rules of section 274(d), and petitioners have provided no credible evidence of any deductible expenses. Petitioners are mistaken to believe their home is their principal or even a secondary place of business such that their daily trips to their TECOM or school locations are deductible business miles rather than commuting expenses. Consequently, respondent's disallowance of the reported $9,064 of depreciation expenses for petitioners' residence and automobiles is sustained.

I. Car and Truck Expenses

Petitioners reported and respondent disallowed $8,073 of car and truck expenses for 2010 in addition to petitioners' claimed depreciation expense for cars and trucks of $9,064. As noted above these expenses related to their three personal automobiles. Exhibit 8-P, offered to substantiate these expenses, itemizes expenses for each vehicle and asserts the Bronco II was used 97%, the 2005 Nissan

Pathfinder 95%, and the 2008 Nissan Pathfinder 90% for business. As noted, the strict substantiation rules of section 274(d) apply to these deduction claims. Petitioners have not provided any records, much less contemporary records or their equivalent, containing the information required for "listed property" as defined in section 280F(d)(4), which includes passenger automobiles. See our discussion supra and section 1.274-5T(c)(2) and (3)(i), Temporary Income Tax Regs., 50 Fed. Reg. 46017, 46020 (Nov. 6, 1985). Consequently, none of their claimed car and truck expenses is allowable and respondent's disallowance of the reported $8,073 is sustained in full.

## II. Itemized Deductions

Since we have sustained respondent's disallowance of deductions for various reported Schedule C business expenses, the question arises as to whether any of these expenses are allowable as additional itemized deductions on Schedule A. Although not explicitly addressed by the parties, one such expense stands out. It is the $8,647.29 portion of their $23,127.29 home mortgage interest expense deduction claimed on Schedule C and disallowed by respondent.[11]

[11]Another item of interest is the $155 Tax Software Store item on page 2 of Exhibit 14-R Rab Biz Expenditures 2010.xls. This could be for an item deductible under sec. 212(3). However, the PayPal payment references on page 94 of Exhibit 12-P and its listing on page 2 of Exhibit 14-R do not provide the needed

(continued...)

Section 163(a), except as otherwise provided, allows a deduction for "all interest paid or accrued within the taxable year on indebtedness." Section 163(h)(2)(d) provides an exception from the general rule for "Personal interest" which is defined as "any interest allowable as a deduction under this chapter other than--[inter alia] * * * (D) any qualified residence interest". Section 163(h)(3) defines "qualified residence interest" generally as including the interest paid on the taxpayers' personal residence's "acquisition indebtedness" up to $1 million and "home equity indebtedness" up to $100,000 where, as here, a joint return was filed.

The parties have stipulated a Substitute Form 1098, Mortgage Interest Statement, issued by USAA Federal Savings Bank reflecting mortgage interest received by that bank from petitioners during 2010 of $23,127.29. As this document is required to be filed with the Internal Revenue Service, it should have been in respondent's administrative file for petitioners' 2010 taxable year. On audit and in the statutory notice of deficiency respondent allowed the $14,480 home mortgage interest deduction claimed on Schedule A, but disallowed the $8,647.29 home mortgage interest deduction claimed on Schedule C as an expense "for business use of home." However, respondent failed to make a correlative

---

[11](...continued)
information as to what was purchased for us to determine that this item is deductible, and the record contains no other information about this item.

adjustment, in the same amount, to petitioners' allowable qualified home mortgage interest deduction.

Neither party specifically addressed this issue at trial or on brief, but petitioners have claimed the full $23,127.29 amount as a deduction for 2010 and have carried their burden of going forward with credible evidence. Respondent has not argued and has produced no evidence that the total reported interest expense of $23,127.29 was in any way limited by the $1 million or less acquisition indebtedness limitation or the $100,000 home equity indebtedness limitation of section 163(h)(3)(B)(ii) or (C)(ii). Consequently, petitioners will be allowed an additional $8,647.29 deduction for Schedule A itemized home mortgage interest.

III. Accuracy-Related Penalty

The statutory notice of deficiency unfortunately determines a penalty here on a "shotgun" basis for one or more or all of the reasons set out in section 6662(b) without any specificity. On brief, at last, respondent has clarified the issue and now contends the penalty applies because of an underpayment due to negligence and/or intentional disregard of rules or regulations and because there is a substantial understatement of income tax.

Section 6662(a) imposes an accuracy-related penalty equal to 20% of the portion of the underpayment to which section 6662 applies. Section 6662(a)

applies to the portion of any underpayment which is attributable to, inter alia, negligence or disregard of rules or regulations, sec. 6662(b)(1), or a substantial understatement of income tax, sec. 6662(b)(2). "Negligence" is defined in section 6662(c) as "any failure to make a reasonable attempt to comply with the provisions of this title", and "disregard" as "any careless, reckless, or intentional disregard." Caselaw similarly states that "[n]egligence is a lack of due care or the failure to do what a reasonable and ordinarily prudent person would do under the circumstances." Freytag v. Commissioner, 89 T.C. 849, 887 (1987) (quoting Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967), aff'g on this issue 43 T.C. 168 (1964) and T.C. Memo. 1964-299), aff'd, 904 F.2d 1011 (5th Cir. 1990), aff'd, 501 U.S. 868 (1991). Pursuant to regulations, "'[n]egligence' also includes any failure by the taxpayer to keep adequate books and records or to substantiate items properly." Sec. 1.6662-3(b)(1), Income Tax Regs. In the instance of individuals there is a substantial understatement of income tax for any taxable year if the amount of the understatement exceeds the greater of 10% of the tax required to be shown on the return for the taxable year or $5,000. Sec. 6662(d)(1)(A). The understatement for the 2010 taxable year comes within the definition of a substantial understatement. Petitioners had reported no income tax liability on their filed income tax return for 2010.

An exception to the section 6662(a) penalty is set forth in section 6664(c)(1), which provides: "No penalty shall be imposed under * * * [this part, which includes sections 6662 and 6663] with respect to any portion of an underpayment if it is shown that there was a reasonable cause for such portion and that the taxpayer acted in good faith with respect to such portion." Regulations interpreting section 6664(c) provide: "The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all pertinent facts and circumstances. * * * Generally, the most important factor is the extent of the taxpayer's effort to assess the taxpayer's proper tax liability." Sec. 1.6664-4(b)(1), Income Tax Regs.

We conclude that respondent has met the section 7491(c) burden of production with respect to the negligence penalty. The evidence adduced in this case reveals a serious dearth of adequate records and substantiation for reported items. With this threshold showing, the burden shifts to petitioners to establish that they acted with reasonable cause and in good faith as to the claimed items. See Higbee v. Commissioner, 116 T.C. 438, 448 (2001).

Other than their incorrect substantive position that they were entitled to the deductions they reported, as discussed previously, petitioners have introduced no evidence to excuse them from the accuracy-related penalty. On these facts,

petitioners have failed to establish that they met each and every requirement necessary for a successful reasonable cause defense. Petitioners are liable for the section 6662(a) accuracy-related penalty.

## IV. Discretionary Penalty

By motion filed July 20, 2015, respondent has moved the Court to impose a section 6673 penalty of $5,000 for petitioners' conduct in pursuing this case "primarily to delay collection of their proper income tax." Respondent also asserts that "petitioners know (or should know) that their position is groundless." To be certain, these are good grounds for respondent's motion given petitioners' history in this Court, previously described. Nevertheless, there is a problem with respondent's request.

As noted above, in denying petitioners their claimed $8,647.29 Schedule C home mortgage interest expense deduction respondent inexplicably failed to make the needed correlative adjustment to petitioners' claimed deduction for $14,480 of home mortgage interest on Schedule A. Given respondent's omission, we cannot conclude that this case was maintained primarily for delay or that petitioners' positions were entirely frivolous. Consequently, the Court will not impose a section 6673 penalty in this case.

We warn petitioners, however, that their conduct is in material noncompliance with Federal tax law.  Our opinions here and in T.C. Summary Opinion 2014-105 are tailored to explain what the law requires.  Petitioners have been fairly warned; consequently, any further conduct in the same vein as that considered here and in our previous cases addressing their tax liabilities and tax payments may well, under present law, result in the application of a section 6673 penalty in an amount of up to $25,000.

To reflect the foregoing and to account for the increased deduction for Schedule A home mortgage interest,

An order denying respondent's motion will be issued, and decision will be entered under Rule 155.